(45 Misc. Rep. 6.)

## CARLISLE v. BARNES.

(Supreme Court, Special Term, New York County. August, 1904.)

1. JUDGMENT—SETTING ASIDE—SURPRISE.

On a motion to vacate a judgment against defendant and for a new trial, under Code Civ. Proc. § 724, surprise applicable to the allowance of an amendment to conform to the proof is no ground for vacating the judgment where defendant was in court as a witness, and ample opportunity to claim surprise was afforded, but no suggestion thereof made.

2. SAME.

The surprise which can justify the vacating of a judgment on a trial where plaintiff is present, after motion to conform the pleadings to the proof, can only mean inability to procure evidence which would be available if ample opportunity was given.

Action by John G. Carlisle against Reon Barnes for breach of covenant. Verdict for plaintiff. Motion to vacate judgment and for a new trial denied.

Hitchings & Palliser (Hector M. Hitchings, of counsel), for the motion.

Curtis, Mallet, Prevost & Colt (Henry M. Ward, of counsel), opposed.

CLARKE, J. This is an action to recover damages for the breach of a contract of employment by an attorney against his client. Upon the trial the contract was proved by evidence partly written and partly oral. Plaintiff wrote to defendant a letter dated February 19, 1901, as follows:

"In accordance with our understanding the other day I write to say that I will undertake the collection of the claims in your hands on the following conditions: You are to place in my hands all the claims controlled by you for taxes or duties paid at New York on goods brought from Porto Rico, to include all claims for such duties that may be paid hereafter up to the time of the final decision on the questions involved. I will institute and prosecute such proceedings in the courts or elsewhere as may be necessary to secure their collection, and when collected, in whole or in part, I am to receive as compensation for my services a sum equal to 5 per cent. upon the whole amount actually collected, and no compensation in case nothing is collected; but you are to defray all necessary expenses in the prosecution and collection of the claims, which will consist of charges for printing, traveling expenses and such incidental charges as may be connected with the business. Of course, this is a mere outline of the matter and if you desire to go on with it we will prepare and sign a formal contract."

No such formal contract was prepared or signed. Plaintiff testified that a few days thereafter he met defendant upon the street, and that defendant accepted the terms tendered, and promised to send the papers and the names of the members of the firms the following day or the day after, so that the proceedings could be begun. It was in evidence that plaintiff repeatedly requested the papers in writing; that defendant did not reply to said letters or send the papers, but employed other attorneys, who collected from the government a large amount of money. Upon that amount plaintiff demanded 5 per cent. as his damage in not being permitted, though willing, ready, and able, to perform the contract on his part. The defendant denied having accepted plaintiff's offer, and therefore the making of the contract. It was conceded that plaintiff had done no work under the contract. At the close of the testimony plaintiff moved to amend the complaint by changing the date of the employment from October, 1900, to February, 1901, and the date of the agreement as to payment from "on or about March 20, 1901," to "on or about February 20, 1901," to conform to the proof. To this defendant's counsel objected as follows:

"It seems to me that first amendment ought not to be allowed. We came in here under a notice contained in the pleading to dispute a contract which was alleged to have been made in October. I was perfectly prepared to prove that no such contract was made, but with the amendment just now allowed it prevents us—has prevented us—from interposing such defense as we might otherwise have interposed. The Court: If you say to the court that the allowance of these amendments changing the date from October, 1900, to February, 1901, has surprised you so that you are not able to produce evidence which otherwise you would have been able to produce, that makes an entirely different question. If you make that statement I will— Defendant's Counsel: I don't know that I ought to make that statement. I desire to be perfectly frank with your honor. We came here to meet the allegations of the complaint, which was a contract made in October. That is the issue we have made here, and we came here prepared to meet it. What we could have done if the pleading had correctly stated the cause of action is a different matter. I cannot answer that. We came here to meet fully the allegations of the complaint. The Court: Do you claim surprise? Defendant's Counsel: I claim

surprise when they undertake to say they did not make a contract in October, when they allege they did. The Court: Unless counsel will take the responsibility of saying that, but for the surprise, they would have been able to present other evidence to meet this new allegation, I will grant the motion. If counsel does state upon his responsibility that he was led into a position relying upon the allegations of the complaint, upon which he had a right to rely, and therefore is not prepared with evidence which he otherwise would have had, that raises a situation— Defendant's Counsel: With all deference to your honor, it strikes me you ought not to put me in that position. I came here to meet an issue that was presented by the pleadings, and when my client consulted me as to the proof that was necessary I said, 'We have the letter of the plaintiff of February 19th, which destroys his allegation that he made a contract that was in October,' and that was sufficient. I had a right to say that to my client, and I could not ask him for anything further, and I did not. Plaintiff's Counsel: I don't think you intended to say what you did. The fact was that you had our letter of February 19th, showing that we contended there was a contract, and we gave you a bill of particulars calling for a letter showing the terms of the employment as of March, and not October. The Court: In view of the declination of counsel to answer the question of the court categorically, I will allow the amendment. Defendant's Counsel: We take an exception."

Defendant's counsel thereupon moved for the direction of a verdict, among others, as follows:

"That it appears from the testimony of the plaintiff that he rendered no services of any nature or character to the defendant in and about the matters set up in the complaint; that he had proved no damages that he has suffered by reason of the alleged breach of the contract by the defendant, and that there is no basis upon which the jury can find for the plaintiff."

Which request being refused, he duly took exception. The court thereupon left the question of the making of the contract to the jury as a pure question of fact, and instructed them that, if they found that the contract had been made, the damages to which plaintiff would be entitled would be 5 per cent. on the amount actually collected from the government. Defendant's counsel duly excepted to the refusal of the court to charge that:

"If the jury shall find that the defendant employed the plaintiff for and on his own behalf, and agreed to pay him for such services as he should render, then the plaintiff can only recover the fair and reasonable value of services which he actually rendered to the defendant in and about the subject of his employment, and the burden is on the plaintiff to show the amount and value of the services so rendered."

The jury rendered a verdict for the plaintiff for $21,900.09, with interest, making $25,349.35. Defendant's counsel moved to set the verdict aside and for a new trial upon the grounds stated in section 999 of the Code, upon which the court said:

"I do not think there is anything in the motion so far as it is against the weight of evidence. It was a clear question of fact. There is one point, however—whether a contract for personal services of this kind comes within the doctrine of the Wakeman, Devlin, and other Cases—and I think there is sufficient of a question there to receive a brief."

Briefs were submitted, and a decision denying the motion handed down on June 9th, and the order and judgment entered on June 11, 1904. This is a motion for an order vacating and setting aside said judgment upon the ground that the same was taken against the defendant through his mistake, inadvertence, surprise, and ex-

cusable neglect, and for a new trial under section 724 of the Code of Civil Procedure, upon an order to show cause dated July 7, 1904, procured by substituted attorneys. So far as "surprise" is concerned, it can only be applicable to the action of the court in allowing the amendment to the complaint to conform to the proof. If that was error, defendant is fully protected by due exception taken at the time. Surprise under such circumstances can only mean the inability to produce evidence otherwise available. The defendant, being in court, having been himself a witness, and having heard the colloquy between court and counsel, where ample opportunity to claim such surprise was afforded, made no such suggestion. Nor is there any tangible claim made in the present papers. The only question of fact was as to the verbal acceptance of the contract. Defendant testified that he did not have the conversation at the time and place, or at any time and place, as sworn to by plaintiff, and he offers now no statement of fact tending to show that, if given another opportunity, he could do more than he did on the trial, namely, put his oath against the plaintiff's. Every question of law raised in the voluminous brief of defendant's present counsel as to the contract, its enforceability, and the measure of damages thereunder, is raised in the case, and may be examined by the Appellate Division. It is a question whether such a contract for an attorney's services upon a contingent fee does come within the rule as to breaches of executory contracts by refusal to allow performance, and whether the attorney, without performing any service, can yet recover the stipulated amount upon proof of refusal on the client's part to permit him to perform and his readiness and willingness to perform. It was so much in the case that the motion for a new trial made at the close of the case was reserved, and briefs received. That question lies at the foundation of this suit. There was no neglect or inadvertence of defendant's former counsel, who tried the case, in presenting it. The question was squarely raised, squarely passed upon, and is squarely before the appellate court. While there is undoubted power in the court to grant this motion in a proper case, it should only be exercised to remedy a clear and palpable wrong, which otherwise would be remediless. This is not that case. As the papers show no clear case of the ability to supply other and material evidence on the disputed question of fact, and as there is no apparent inadvertence or neglect in raising questions of law now safely on their way to the reviewing court, there seems no justifiable reason for granting this motion. Motion to vacate judgment and grant a new trial denied, with $10 costs.

Motion denied, with $10 costs.